MICHAEL SULLIVAN et al. *v.* JAMES MILLER et al.

In Matter of the Petition of JOSEPH J. LITTLE et al., Appellants, *v.* JOHN F. AMES, Receiver, etc., Respondent.

In January, 1883, M. made an assignment for the benefit of creditors. Among the property assigned were certain stereotype and electrotype plates then in the possession of L. & D., as custodians for M., upon which was a chattel mortgage, which was not filed until the day of the execution of the assignment. In March, 1883, L. & D. recovered a judgment against M. for a debt accruing prior to January, and attempted to levy upon the plates by virtue of an execution issued thereon. By an order made in this action the assignee was removed and a receiver, *pendente lite,* of the assigned property appointed. In proceedings instituted by the receiver against L. & D., who had refused to deliver up the plates, it was adjudged that said firm had no lien, and that the receiver was entitled to possession. The plates were thereupon, and previous to July, 1883, delivered to the receiver. In March, 1884, the receiver applied *ex parte* for directions as to the disposition of the property, and an order was thereupon made directing a sale of the plates and payment of the mortgage debt out of the proceeds; this the receiver did. In November, 1884, L. & D. petitioned to have the *ex parte* order vacated so far as it directs the payment of the mortgage. *Held,* that the petition was properly denied; that as, at the time of the sale, L. & D. had no lien upon the property, their remedy, if any, was to obtain an order of the court directing as to the disposition of the proceeds, and until this was done it was the duty of the receiver to proceed under the order of the court; that when the mortgage became payable the mortgagee, in the absence of fraud, became entitled, as against the mortgagor and his representatives, and all other persons who had not acquired liens, to demand, receive and sell the mortgaged property; that after waiting a reasonable time to enable the petitioners to take steps, if they desired, to establish a right to the property, it was the duty of the receiver to apply for and take the directions of the court, and he was under no obligation to give notice to the general creditors; and that the petitioners having laid still from July, 1883, to November 1, 1884, without taking any steps or giving any notice of an intention to assert an interest in the property, if they had any equitable interest (as to which *quære*), they had lost it by their laches.

The principles governing an accounting by an assignee under a general assignment control in such a case, and relieve the receiver from any liability for payments and disbursements made in good faith in the execution of the duties of his receivership.

The general creditors of a mortgagor of chattels have no right to assail the mortgage as invalid until they have secured a lien thereon by a levy under judgment and execution, or in some way have acquired a legal or equitable interest therein.

(Argued June 23, 1887; decided October 4, 1887.)

APPEAL by Joseph W. Little and others, petitioners, from order of the General Term of the Supreme Court in the first judicial department, made June 1, 1886, which affirmed an order of Special Term denying an application of said petitioners, the nature of which, as well as the material facts, are stated in the opinion. (Reported below, 40 Hun, 516).

*James R. Marvin* for appellants. The mortgages not being filed until after the demands of Little & Co. had accrued, and the mortgagee not having taken possession of the property, rendered the mortgages void as to them, although their judgment was not recovered or their executions issued until after the mortgages were filed. (2 R. S., 136, §§ 9, 10; *Thompson* v. *Van Vechten*, 27 N. Y. 568; *Stewart* v. *Beale*, 7 Hun, 405; 68 N. Y., 629; *Parshall* v. *Eggart*, 54 id., 18; 11 Hun, 634; 52 id. 188; 77 id. 628; 34 id. 253; 35 id. 320; 17 id. 580; 52 id. 185; 12 Blatch. 548; 14 N. Y. 71; 57 Barb. 155; 32 N. Y. 457; 28 id. 45; 101 U. S. 739.) The execution issued to the sheriff without levy bound the property covered by the mortgages from the time of its delivery to the sheriff. (27 N. Y. 247; Code of Civ. Pro., §§ 1404, 409.) Knox and the receiver stand in the same position that Miller stood. They acquired no rights that he did not possess. They took the mortgaged property subject to the rights, legal and equitable, of Little & Co. (37 Barb. 185; 32 id. 322; 2 Hilt. 275; 14 Abb. Pr. 112; *Steward* v. *Beale*, 7 Hun, 405, 421; 17 N. Y. 28; id. 580, 584; 12 Blatch. 548; *Mitchell* v. *Winslow*, 2 Story, 492; Burrill on Assignments, § 391; *Stewart* v. *Platt*, 101 U. S. 739; 95 id. 764; *Van Hoesen* v. *Radcliffe*, 17 N. Y. 580; 1 Keyes, 203, 213; 4 Duer, 107; 23 Barb. 653.) Under chapter 314, Laws of 1858, a general assignee, or receiver

acting for creditors, can impeach transfers of property of their assignor for fraud, but for fraud only. (*Collins' Case,* 12 Blatch. 548; *Stewart* v. *Platt,* 101 U. S. 739; 7 Hun, 238; 26 id. 353; 72 N. Y. 424.) The creditor may assert his remedy given by the statute against an unfiled mortgage whenever he shall have obtained his judgment. (27 N. Y. 568.) The right of Little & Co. to assail the mortgages of Masterson is given by statute. The right given is absolute and admits of no qualification, and cannot be defeated by any act of the mortgagor. (*Niagara Co. B'k* v. *Lord,* 33 Hun, 564.) Little & Co. could not levy upon the property and take it from the receiver's possession and sell it, but they had a right to come into a court of equity and assert their right to have sufficient of the proceeds of the mortgaged property, realized by the receiver from its sale, applied to the satisfaction of their judgment. (*First Nat. Bk. of Oswego* v. *Dunn,* 97 N. Y. 149; *Stewart* v. *Beale,* 7 Hun, 421; 68 id. 629.) The appointment of the receiver merely preserved and secured the property of the debtor Miller for his creditors. (*Mirich* v. *Selden,* 36 Barb. 15, 21; 77 N. Y. 58; 8 Daly, 162; 29 Barb. 68; 4 Hun, 71; 3 Kern. 556; 43 How. 492; 12 Abb. N. S. 427; 35 N. Y. 560; 53 id. 461; 37 Barb. 225; 1 Abb. 274; 10 How. 481; 28 id. 337; 31 N. Y. 631, 635; 7 Paige, 65.) The proper remedy of Little & Co. is by a motion in the suit in which the receiver was appointed. (60 N.Y. 92; 65 Barb. 275; 71 N. Y. 225; 79 id. 271; 4 Paige, 374; 1 id. 269; 14 Hun, 8; 14 W. Dig. 241; 36 Barb. 15; 48 N. Y. 62; 10 Hun, 89; 72 N.Y. 170; *Hazard* v. *McFarland,* Seld. Notes, 248.) Little & Co. are not precluded from enforcing their claim by the statute of 1858. (37 Barb. 185; 32 id. 322: 2 Hilt. 275; 14 Abb. Pr. 112; 7 Hun, 405, 421; 17 N. Y. 28; *Steward* v. *Platt* 101 U. S. 739; 12 Blatch. 548; 7 Hun, 238.) Having notice it was the duty of the receiver, before paying over the money to the mortgagee, to have brought Little & Co. into court and had their rights adjudicated, and for this neglect of his duty he is personally liable. (4 Hun, 373; *Moulton* v. *McCarthy,* 6 Robt. 470; *Annis* v. *Upton,* 66 Barb. 370; *Hitt*

v. *Rusch*, 22 Ala. 563; Greenlf. Ev. 381, § 375.)  Notice to the receiver's agent and his attorney and counsel was effectual as a notice to the receiver.  It does not matter in what manner the receiver got the notice, so long as he had it.  (6 Seld. 184; 72 N. Y. 89; 52 id. 280; 2 Hill, 464; 12 John. 306; 3 Barb. 529.)

*Thomas D. Robinson* for respondent.  Upon making the assignment for the benefit of creditors, Miller placed his property beyond their reach.  Their status as creditors then became fixed, and nothing they could afterwards do could alter their rights.  The assignee is governed by the express terms of the trust. (*Nicholson* v. *Leavitt*, 6 N. Y. 519.) The assignment is both his guide and measure of his duty. Beyond that, or outside of its terms, he is powerless and without authority.  Control of the court over his actions is limited in the same way.  (*In re Lewis*, 81 N. Y. 424.)  The chattel mortgages were valid between the parties without being filed, and they were filed long before the appellants recovered their judgment, and are good against them until set aside. (*Bostwick* v. *Monck*, 40 N. Y. 387; *Spring* v. *Short*, 90 id. 538.)  The question whether the receiver had notice of a claim of lien from the appellants, being a question of fact arising upon conflicting evidence, cannot be reviewed in this court.  (Code of Civil Pro. § 1337.)

RUGER, Ch. J.  The petitioners, Little & Demorest, commenced these proceedings to vacate and annul an order previously made in this action, which authorized Ames, the receiver, to sell certain property and pay the liens thereon, and to obtain an order requiring the receiver to pay the amount of a judgment recovered by them against Miller. The relief sought by the petitioners was denied by the Special Term, and, upon appeal, its order was affirmed by the General Term, whereupon this appeal was taken.

The situation out of which the controversy arose is substantially as follows:  On the 4th of January, 1883, Miller,

being in embarrassed circumstances, made a general assign-
ment of his property to Knox for the benefit of his creditors.
Among the property thus assigned were certain stereotype
and electrotype plates, then in the possession of Little &
Demorest, as custodians for Miller, and the eventual appro-
priation of the value of which is the subject of controversy
in this proceeding. In July, 1882, these plates were mort-
gaged by Miller to one Masterson to secure the payment, one
year from date, of $6,500, borrowed money, and providing
for the possession of the property by Miller until default in
the payment of the mortgage. This mortgage was not filed
until January 4, 1883, the day upon which Miller executed
his general assignment. It is not claimed that either the
assignment or the mortgage were fraudulent in fact, but it is
alleged that the mortgage is void, as against creditors and
*bona fide* purchasers, for want of filing at the time of its
execution.

In March, 1883, Little & Demorest recovered judgment
against Miller for an indebtedness accruing between July,
1882, and January, 1883, and in March, 1883, attempted to
levy upon the plates under an execution issued upon such
judgment. Knox having committed some violation of his
duty, as assignee, was, by an order of the court in this action,
on February 19, 1883, removed from his position, and Ames
was thereupon appointed receiver, *pendente lite*, of the property
covered by the assignment. After Ames' appointment he
attempted to obtain possession of the plates from Little &
Demorest, but they refused to give them up, claiming to hold
them under the levy made by the sheriff upon their execu-
tion; and when this claim was adjudged against them still
claimed to hold them under a lien for storage. Both of these
claims were duly presented to the court in proceedings insti-
tuted by Ames, as receiver, against Little & Demorest and
the sheriff of New York, to recover possession of the prop-
erty; and it was adjudged in such proceedings that Little &
Demorest acquired no lien upon it by virtue of the levy
under their execution or otherwise, and that the receiver was

entitled to the possession of the property by virtue of the
assignment and his appointment as receiver. These orders,
were not appealed from and the questions therein decided
are *res adjudicata* between the parties to this proceeding.

The plates in question were, previous to July, 1883,
delivered by the petitioners to the receiver, and he thereafter
held them as a part of the assigned estate. The adjudica-
tions referred to were made previous to July, 1883, and after
that time, no further attempt was made by Little & Demorest
to establish a lien upon the property or to reach the proceeds
of its sale until the commencement of these proceedings in
November, 1884. In March, 1884, Ames applied *ex parte* to
the court for its direction as to the disposition of this property
upon a petition showing that it was of greater value than the
amount of the lien upon it, and that its further retention by
him would entail large expense upon the estate. The court,
on March 15, 1884, made the order, which this proceeding
sought to vacate, directing him to sell it for a sum not less
than $7,800, and to pay the mortgage debt out of such pro-
ceeds. The receiver thereupon sold the property at public
sale, and from a portion of the proceeds paid the amount of
the mortgage debt to Masterson, the mortgagee.

It is claimed by the appellants that the receiver could not
do this in good faith, as he had been notified of their claim
and the grounds upon which it was based. A written notice
to this effect was claimed to have been served upon Ames on
July 6, 1883, but the receiver disputed the fact of its service.
The question whether the notice had been served was made
the subject of a reference by the court upon the hearing of
this proceeding, and was the principal one litigated in that
court. Much evidence was given on both sides of the ques-
tion, the receiver Ames testifying positively that such a
notice had never been served. Upon this disputed question
of fact the referee found that the evidence did not establish
the service of the notice. This report was confirmed by the
court, and the facts found thereby are not open to contro-
versy here.

The petitioners insist on this appeal that they are entitled
to have the order of March 15, 1884, vacated so far as it
directs the payment of the Masterson mortgage, and to have
an order made directing the receiver to pay them the amount
of their judgment. We do not think they were entitled to
the relief demanded. The order which they ask to set aside
has already been executed by the receiver, the property has
been sold under it, and the proceeds paid over under the
direction of the court in good faith by the receiver. The
effect of the order asked for, if granted, would be to charge
the receiver with the payment of the petitioners' judgment
and entail upon him the loss of that amount. At the time
of the sale of this property by the receiver, the petitioners
had acquired no lien, either legal or equitable, upon it, and
no legal right to demand of the receiver the payment of
their judgment. The remedy of Little & Demorest, if any
they had, was to obtain the order of the court directing the
disposition of the proceeds of the fund. Until this was
obtained it was the duty of the receiver to proceed in the
execution of the duties of his office and convert the assigned
estate into money and pay out the proceeds under the direc-
tion of the court. (*Herring* v. *N. Y., L. E. & W. R. R.
Co.*, 105 N. Y. 375.) The general creditors of a mortgagor
of chattels have no right to assail a mortgage, or other con-
veyance of property made by him, as invalid until they have
secured a lien thereon by levy under a judgment and execu-
tion, or, by some other method, acquired a legal or equitable
interest in the property. (*Southard* v. *Benner*, 72 N. Y.
426; *Geery* v. *Geery*, 63 id. 256.) Until such lien is
acquired, the receiver holds the property subject to the order
of the court and liable to pay the proceeds thereof to the
person designated by it. At the time of his assignment
Miller had an assignable interest in the property, and the
assignee took the legal title to it subject to the payment
of the liens thereon; and upon the appointment of the
receiver that officer succeeded to the rights, and became
subject to the duties of the assignee, so far as he was directed

by the court to perform them. When the mortgage became payable, in July, 1883, the mortgagee became entitled, as against the mortgagor and his representatives, and as against all other persons who had not acquired liens thereon, to demand and receive possession of the mortgaged property and the right to sell it, and apply the proceeds of its sale to the payment of his debt. The receiver could not successfully resist the claim of Masterson to the possession of the property, or a proceeding on his part to enforce payment of the mortgage debt. After awaiting a reasonable time for the petitioners to take steps, if they desired to do so, to establish a right to the property in question, it was the plain duty of the receiver to apply and take the direction of the court as to the disposition to be made of the property in his hands, and he was under no obligation to give notice to the general creditors of Miller of such application. (*Herring* v. *N. Y., L. E. & W. R. R. Co., supra.*) The legal title and all of Miller's interest in the property passed by the assignment to the assignee, and upon his removal, to the receiver of the court; and if he was debarred for any reason from disputing the validity of the Masterson mortgage, it furnished no foundation for the claim of Demorest & Little to take possession of the property. The property was then in the custody of the law and was not subject to levy upon a judgment against the mortgagor, and this was adjudicated in the orders referred to. If there were creditors of Miller, who supposed themselves entitled to make equitable claims to any portion of the assigned estate in the hands of the receiver, it was their privilege to bring them to the attention of the court, upon proper notice to the parties to be affected thereby, and obtain its adjudication upon their claims and its order authorizing their enforcement. The petitioners have never, however, attempted to bring Masterson, whose interests in the property they assail, into court, or to obtain any order affecting his claim to the proceeds of the mortgaged property; and they occupy the same position in respect to it that other general creditors of Miller hold. They laid still

from July, 1883, until November, 1884, without taking any steps or giving any notice of an intention to assert an interest in the property in question, and we think they were then too late to do so successfully. It is quite true that previous to July, 1883, the petitioners had asserted rights as to the property in question, but those rights were duly litigated between the receiver and the petitioners and adjudicated against the petitioners, and the receiver had no adequate reason for supposing that they intended to assert any other or further claim in such property. Under these circumstances, and without haste, the receiver proceeded in the performance of his duties and sold the property and paid out the proceeds in good faith, under the order of the court, to the person apparently entitled to them. There is no principle of law or equity upon which he can be compelled to pay them again.

It is not our intention to discuss the question whether the petitioners had at any time an equitable claim which might have been enforced against this property, but we do hold that if they ever had such claim they have lost it by reason of their laches. The principles governing accountings by an assignee under a general assignment control this case and relieve the receiver from any liability for payments and disbursements made by him in good faith in the execution of the duties imposed upon him by his receivership. It is said in *Young* v. *Brush* (28 N. Y. 671) that "it is thought to be well settled that a trustee, while acting under a general trust, is entitled to be allowed for all disbursements for taxes, repairs, salaries, insurances, and for all other charges and expenses which he, in good faith, thinks proper to pay." In *Wakeman* v. *Grover* (4 Paige, 23) it was held: "If assignees under an assignment which is fraudulent in law, pay over the proceeds of the assigned property to creditors of the assignor in pursuance thereof, before any creditors obtain a general or specific lien on the assigned property, the other creditors cannot compel the assignee to account to them for such proceeds." The head-note in *Ames* v. *Blunt* (5 Paige 13) states the rule to be that, "although an assignment for the benefit

of creditors is fraudulent as to those who do not assent to it, the assignees are not answerable for the proceeds of assigned property actually paid to *bona fide* creditors of the assignor, pursuant to the assignment, before any others have obtained either a legal or equitable lien on such property or the proceeds thereof."

The doctrine of these cases has been frequently app..ed in subsequent cases in the courts of this State (Bishop on Insolvent Debtors, § 229), and the case in hand is within the principle there laid down. The receiver in this case had authority, and it was his duty, to redeem the property in question from the lien of the Masterson mortgage and apply the surplus thus obtained to the purposes of the trust. Such mortgage was a valid lien thereon as against him, and could be assailed only by such creditors of the mortgagor as had acquired a lien upon the property, or some footing in regard thereto which gave them a right to contest the question of its validity. The receiver was under no obligation to institute such a contest, and could safely proceed in the execution of his trust until restrained by some order of a court having jurisdiction over him.

We are, therefore, of the opinion that the orders of the courts below should be affirmed, with costs.

All concur.

Orders affirmed.