Judgment and order affirmed.

LOUIS MAYER AND OTHERS, RESPONDENTS, *v.* ALICE HAZARD AND WALTER P. HESS, ASSIGNEES, ETC., APPELLANTS.

*Assignee for creditors — not allowed for the expense of resisting a successful suit to set aside the assignment — when properly charged with the costs of the reference to pass his accounts — when not allowed for counsel in making out his accounts for the reference.*

In an action, in which an assignment for the benefit of creditors had been set aside as fraudulent, a reference was ordered to settle and pass the accounts of the defendant Hess, the general assignee. On this reference objection was taken to certain expenditures charged in the account to have been made by the assignee for legal services and disbursements, rendered necessary in resisting the action in which the assignment had been set aside.

*Held,* as to the expenditures incurred and made in the defense of the suit successfully prosecuted to set aside the assignment, that such expenditures were not for the benefit of the assigned estate, and were not properly allowed to the assignee out of the funds thereof.

*Semble,* that the assignee was not without protection in this respect, because although he could not be allowed to charge these expenditures against the assigned estate, yet he had had it within his power when the action was brought to call together the creditors under the assignment who were interested in maintaining it, and to secure an obligation from them to indemnify him against any expenditures he might make in defending the action, and in that manner promoting their interest; that by adopting such a proceeding he would either have protected himself against all possible loss or would have been absolved from the obligation of resisting the actions brought against him to vacate the assignment.

By. the order made on the accounting the assignee was directed to pay the fees of the referee and stenographer, and such other disbursements as were necessarily incurred on the accounting to be taxed by the clerk, these fees and disbursements having been wholly incurred in taking the evidence and conducting the proceedings which became necessary in order to determine the right of the assignee to the charges made by him for the unsuccessful defenses of the action to vacate the assignment.

*Held,* that as the litigation arose from the efforts made to sustain the assignment, and these charges were incurred in attempting to obtain an allowance of the expenses of such litigation, that the assignee himself, being the unsuccessful party in the proceeding, should pay these expenses.

That the charge of $100 made by the assignee for making out his account was also properly disallowed, as the account was in all respects simple and easily stated; there not being the slightest intricacy in it, and the assignee himself being able to have readily made it out; that he should be expected to do so as a part of the services for which commissions would be claimed by him.

APPEAL by the defendants from an order confirming the report of a referee settling the accounts of an assignee under an assignment which had been adjudged to be invalid and had been set aside in this action.

*Lucien Birdseye,* for the appellants.

*D. S. Riddle,* for the respondents.

DANIELS, J. :

The reference, which resulted in the report affirmed by the order from which the appeal has been taken, was ordered to settle and pass the accounts of the defendant Walter P. Hess, as general assignee of the other defendant, for the benefit of her creditors. The assignment had been set aside by a judgment of this court, affirmed on

appeal, where it was held to have been made with intent to hinder, delay or defraud her creditors, and the assignee was required to account for the assigned property which had been received by him and to deliver it over to a receiver appointed in the action. He made out and stated an account which was mostly acceptable to the judgment-creditors, and to that part of it no objection was taken upon the accounting. What the creditors did object to was the expenditures made by the assignee for legal services and disbursements, performed and expended in resisting the creditors' actions to set aside the assignment. The first of the two suits, successful for that object, was commenced in August, 1882, and the creditors objected to all the expenditures made in and about the litigation, for or on account of the assignee, after the 1st of July, 1882; and the controversy, accordingly, as well as the evidence, was directed on the hearing before the referee to these objections and included only those expenditures. Previous litigations had been prosecuted to set aside the assignment as fraudulent, which had terminated in favor of the assignee, and for the expenditures, in the course of the defense to those suits, no objection was presented to the assignee's account, but they were conceded to have been incurred in good faith and for the benefit of the assigned estate. But those to which objection was taken, being the expenditures incurred and made in the defense of the suits successfully prosecuted to set aside the assignment, were not for the benefit of the assigned estate. It secured and received no advantage whatever from the services which were so bestowed; and if the expenditures, made on account of these services, could be allowed they would not only deplete but absorb the entire amount of the estate in the hands of the assignee.

It has been urged in his behalf that the indebtedness incurred by him in the preceding litigation was not wholly extinguished by the payments to which objection has not been taken, but, in any view of the evidence, that a balance of $298.21 still remained due and unpaid. But upon a careful consideration of the evidence by the referee he concluded that claim to be destitute of foundation. That which was given on the part of the assignee, it is true, places a value upon the preceding services greatly exceeding the amounts which had been paid, so great as to betray the suspicion at least that the object and design of the assignee was in this manner to

absorb the entire residue of the estate and prevent the creditors from receiving any more than $403.58 which had been paid over to the receiver. This suspicion tended very materially to detract from the force and effect of the testimony given on behalf of the assignee, and to confirm the conclusion that the evidence of the witness examined on behalf of the creditors was more nearly accurate in his estimate of the value of the services which had been rendered. And the amounts which were paid prior to the 7th of September, 1882, of themselves also indicate a fair probability that the services which had been rendered in the preceding litigation had been compensated and paid. A balance of $148.21 is claimed to have been sanctioned by the evidence of the witness, but in reaching that conclusion the fact seems to have been overlooked that the last of the preceding suits brought to set aside the assignment had been terminated, and the costs and disbursements, amounting to $368.76, incurred in that case, had been paid to the attorney and counsel of the assignee. And it is no more than reasonable to believe that these costs and disbursements exceeded any balance which might be derived, as still owing, under the testimony of the witness whose evidence was taken on behalf of the creditors. The decided probabilities of the case are against the assignee in this respect, and warrant the belief that the entire indebtedness which had previously been incurred by him had been wholly paid and satisfied by the payments stated in his account, and not made the subject of objection. The case accordingly is narrowed, so far as the main feature of the controversy extends, to the expenditures which were made by way of defending the two suits successfully brought to set aside the assignment. By the judgments recovered in those suits the conclusion was reached by the court, and sustained on appeal, that the assignment was unlawful and fraudulent, and the defences made by the assignee were of no service or benefit whatever to the assigned estate. And where services may be performed by an assignee or trustee of that description the authorities have never proceeded so far as to sanction a claim made by him for reimbursement on account of such service out of the assigned property.

On the contrary, the expenditures allowed to him have been limited to those which are incurred and made on behalf of the assigned

or trust estate, and also for its benefit. Where they result otherwise and prove to be disastrous instead of beneficial, there the rule, which is sanctioned by the authorities by implication, decidedly excludes their allowance.

This rule has been supported by the fact that when the success-ful creditor commences his action to set aside the assignment as fraudulent he acquires a lien upon the debts, property and equitable interests of the debtor, and the effect of acquiring that lien, in judgment of law is, where the action proves successful, to entitle him to the benefit of the assigned property for the payment of his indebtedness as of the time when the action itself to set aside the assignment was commenced.

This rule has the sanction of *Wakeman* v. *Grover* (4 Paige 23); *Ames* v. *Blunt* (5 id., 13); *Colburn* v. *Morton* (1 Abb Ct. of App., 378, 386, 387). And the authorities which have been cited and relied upon, in behalf of the assignee to support the appeal, sustain no other legal or equitable rule. But it is stated to be, as it has already been mentioned, that for the acts of the assignee or persons employed by him for the benefit of the assigned estate, he is entitled to be allowed his expenditures.

No other rule was mentioned either in *Levy's Accounting* (1 Abb. N. C., 177); *Davis* v. *Stover* (58 N. Y., 473); *Sullivan* v. *Miller* (106 id., 635); *Young* v. *Brush* (28 id., 667); or *Noyes* v. *Blakeman* (3 Sandf. Supr. Ct., 531), in which all the litigation proved to be for the benefit of the trust estate. Neither of these authorities, nor any other that has been found, sanction the position taken in behalf of the assignee that he is entitled to be allowed the expenses of unsuc-cessfully resisting the actions brought by the creditors to set aside the assignment. The fact has not been overlooked that, in *Meyers* v. *Becker* (29 Hun, 567 ; affirmed, 95 N. Y., 486), the assignee was allowed such expenditures on the hearing before the referee for a settlement of his accounts. But that allowance was in no manner brought in question on either of the appeals in the action. It was not and could not, as the case was presented, be made the subject of discussion or decision, and this authority, therefore, in no manner sustains the charges insisted upon in behalf of the assignee for the expenditures made in the defense of these actions. They conflict in their decision in no respect with the rule already mentioned, that the

allowance of expenditures to the assignee shall be limited by the fact that the services for which they may be made must be proven to be essential and beneficial to the assigned estate. This point was considered directly in *Platt* v. *Archer* (13 Blatch., 351), where, after an examination of the authorities, it was concluded by the judge presiding in the court that the charges made for ineffectually resisting a legal proceeding, found in the end to be regular and proper, could not be allowed for the benefit of an assignee or trustee against the trust estate.

No good reason appears to support these charges, for the services and disbursements on account of which they were made were hostile to the judgment-creditors, who have succeeded in their actions, and for such hostile proceedings they cannot, on any sound principle, be held to be accountable. The services performed and the disbursements made were for the benefit of the creditors entitled to be paid out of the estate under the assignment, and that benefit would form a legal foundation for incurring a liability on their part to repay the expenditures. The assignee is not without protection, because he cannot be allowed to charge these expenditures against the assigned estate, for it was within his power when the actions were brought to call the creditors together under the assignment, who were interested in maintaining it, and secure an obligation from them to indemnify him against any expenditures he might make in defending the actions, and in that manner endeavoring to promote their interests. That is what he should have done; and by adopting that proceeding he would either have protected himself against all possible loss or have been absolved from the obligation of resisting the actions in efforts made to sustain the assignment. These creditors, and not the judgment-creditors, are the persons to whom he should have placed himself in the situation to look for his expenditures in case of an adverse result in the suits; and his failure to do that presents no legal ground for charging these expenditures on the assigned property, and in that manner practically defeating the actions brought by the judgment-creditors. Any other or different rule would operate as an inducement to the assignee to carry on protracted litigations at the expense of the estate, and in. that way diminish the amount which should be available to the successful judgment-creditors, or perhaps exhaust it altogether, which is the effect the court is urged to sanction by this appeal.

The order directed the assignee to pay the fees of the referee and stenographer, and such other disbursements as were necessarily incurred on the accounting to be taxed by the clerk. These fees and disbursements have been wholly incurred in taking the evidence and following the proceedings, which became necessary to determine the right of the assignee to the charges made by him for the unsuccessful defenses. That was the sole objection interposed to his account. In other respects it was not questioned, and as the litigation was all caused by these charges, and the efforts made to sustain and resist their allowance, it follows that the assignee himself, being the unsuccessful party in the proceeding, should pay these expenses.

A charge of $100 was made by the assignee for making out his account, which was the subject of consideration before the referee. This charge was made to reimburse his attorneys for their services in drawing the account, but there was no propriety in employing an attorney to make out and state the account. It was, in all respects, simple and easily stated, including only the charges to the assignee for property received, concerning which there was no controversy, and the items of expenditure made by him and the amounts paid under the assignment to preferred creditors. There was not the slightest intricacy about it, and the assignee himself could have readily made it as it was drawn; and he should be expected to do so as a part of the services for which commissions are claimed by him. It was no part of the office or duty of the attorneys to make and state this account. It might have been done by the services of a clerk of very slight experience, for which no more than a nominal charge would have been made. There were no facts supporting the right of the assignee to this charge of $100, and the court was right in disallowing it, and considering, as it must have done in affirming the referee's report, that it was a simple duty of the assignee to state the account himself.

The decision made by the Special Term in overruling the exceptions and affirming the report of the referee appears to be well sustained, and it should be affirmed, with ten dollars costs and also disbursements.

Brady and Bartlett, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.