### BRIGGS v. AUSTIN et al.

*(Supreme Court, General Term, Fourth Department. February, 1890.)*

LANDLORD AND TENANT—LEASE—LIEN FOR RENT.

Plaintiff let a farm to defendant, with the cows thereon, for one year from April 1, 1887, at an annual rent, payable in the fall, when the butter made on the place was sold, but such butter was to belong to plaintiff until the rent was paid. Defendant was to have all the straw, and half the grain, but plaintiff to have "title to said grain until the rent was paid." *Held*, that plaintiff had no lien for the rent on the hay raised on the farm.

Appeal from special term, Otsego county.

An action by Albert O. Briggs against Ely B. Austin and Harvey Austin. The special term held "that plaintiff was, at the commencement of this action, entitled to all the relief demanded in the complaint, as against the defendant Harvey Austin; that the defendant Harvey Austin had removed sufficient of the hay and butter and other products of the farm and premises, described in the complaint, to pay the amount claimed in the chattel mortgage, described in the complaint and answer, before the commencement of the action, and before the injunction order in said action; that the defendant Harvey Austin has unreasonably defended; that said Harvey Austin's defense was unnecessary; and that the plaintiff was at the commencement of the action and is entitled to the relief demanded in the complaint, as against the defendant Harvey Austin, and to judgment therefor, with costs of this action." As conclusions of law, the court found, viz.: "(1) The plaintiff was entitled, as against the defendant Harvey Austin, to have sufficient of the hay grown on said farm kept and retained thereon, to properly keep said cows thereon to the end of said term, and to all of the hay thereon at the commencement of this action. (2) That defendant, Harvey Austin, obtained no lien upon or interest in said hay, as against plaintiff's right to have the same fed to said cows, by his mortgage. (3) Plaintiff was, at the commencement of the action, entitled to all the relief demanded in the complaint, as against the defendant Harvey Austin; and is entitled to judgment therefor, with costs of this action. (4) The defendant's (Harvey Austin's) defense was unnecessary, and he is not entitled to costs therein. (5) The defendant Harvey Austin has unnecessarily defended." Harvey Austin appeals.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Palmer & Mattice,* for appellant.  *Townsend & Kellogg,* for respondent.

HARDIN, P. J.  Plaintiff in his complaint alleges that on the 1st day of February, 1887, at Oneonta, he and the defendant Ely D. Austin entered into an agreement in writing, under their hands and seals, whereby plaintiff "let and rent to said defendant Ely D. Austin a certain farm and premises of plaintiff, situated in the town of Davenport, in the county of Delaware, described in said agreement and known as the 'Sperry Farm,' containing one hundred acres of land, more or less, together with eleven cows and one bull, then on said farm,—said bull and one cow to be taken from said farm by plaintiff, September 1, 1887,—for the term of one year, to commence April 1, 1887, and end March 31, 1888, unless sooner terminated, as provided in said agreement; for which said defendant agreed to pay plaintiff $250 in the fall of 1887, when the butter made on said farm was sold, or ready to be sold, as specified in said agreement."  The complaint further alleges that by

the terms of the agreement "all of the butter made on said premises should be and remain the property of plaintiff until said rent was fully paid, and that all the grain and products of said land should be and remain plaintiff's, and the title thereto in him until said rent was paid." The complaint also alleges that said defendant "would keep plaintiff's said cows in good condition until grass, in the spring of 1888, and that he would quit and surrender demised premises to plaintiff, his heirs or assigns, in as good condition as he received them from plaintiff, at the expiration of his said term, natural decay and damages by the elements excepted." It also alleged that the defendant Ely took possession of the farm on the 1st of April, 1887. The complaint also alleged that the defendant Harvey Austin "was present at the execution of said agreement by plaintiff and the defendant, and, as plaintiff is informed and believes, knew the contents thereof, and that the products of said farm, to-wit, the butter made from the milk of said cows, and the hay and grain grown thereon, belonged to plaintiff, and were to remain plaintiff's until said rent was paid, and said agreement fully carried out and executed by the defendant Ely D. Austin; and also knew, as plaintiff is informed and believes, that said defendant Ely D. Austin was insolvent and wholly irresponsible, and unable to respond to plaintiff in damages." The complaint further alleges that on "the 19th day of May, 1887, with full knowledge of the facts aforesaid, and intending thereby, as plaintiff is informed and believes, to defraud plaintiff, and deprive him of his said property,—said butter, hay, and grain, the products of said farm,—and prevent the collection of said rent, the defendant Ely D. Austin executed a chattel mortgage to said defendant Harvey Austin, purporting to transfer to said defendant Harvey Austin all of the hay, grain, and grass now growing or standing on said farm, and all the crops, of whatever kind or nature, and filed the same in the town-clerk's office of said town of Davenport on the 20th day of May, 1887." It also alleged that the defendants, "acting together, and fraudulently intending to prevent plaintiff from recovering said rent, and to take from plaintiff's said cows on said farm the hay and grain necessary for their proper sustenance, have removed, or caused to be removed, from said premises a large portion of the hay grown thereon, and a large quantity of oats, corn, and buckwheat grown on said lands, all of which was needed to keep said cows through the present winter, claiming to take and remove the same under and by virtue of said chattel mortgage." The complaint further alleged "that said defendants threaten and intend to remove all of the hay and grain grown on said farm therefrom, and leave nothing thereon with which said cows can be fed or kept, as required by the terms and intentions of said agreement." The complaint alleged that plaintiff had not received to exceed $100 on the rent, and there remained "due and unpaid of said rent $155 and upwards." Plaintiff also alleges that, "before the commencement of this action, plaintiff elected to terminate said lease, and to re-enter and take possession of said farm and premises, and of said cows and said hay, and whatever of the products of said farm remains thereon, and notified the defendants thereof." In the prayer for relief the plaintiff, among other things, asked "that plaintiff have immediate possession of said cows, the barns and outbuildings on said premises, and of said hay, grain, and feed for said cows;" also, that the defendants be "enjoined and restrained from removing any of said hay or grain from said land, and from selling or disposing of any part thereof pending this action, except such as shall be necessary to be fed to said cows."

Harvey Austin, in his answer to the complaint, "denies that it was provided in and by the terms of the lease mentioned in the complaint, or by any other arrangement, ' that all the grain and products of said land should be and remain plaintiff's, and the title thereto in him, until said rent was paid.'" He also denies all the allegations in respect to fraud in the execution of the chattel mortgage; and he avers that the chattel mortgage was made for a val-

uable consideration, and filed in the proper town-clerk's office, and "that this defendant took said mortgage in good faith, and without any fraudulent design or knowledge, suspicion or belief, that it was given with fraudulent design; and this defendant denies, upon information and belief, that said mortgage was given with intent to hinder, delay, or defraud the creditors of Ely D. Austin, but alleges that the same was given to secure a *bona fide* debt due this defendant from said defendant Ely D. Austin.". He makes several other specific denials of allegations in the complaint, and asks to have the complaint dismissed.   He also sets up the chattel mortgage which he received to secure $100 from Ely, which chattel mortgage covers "all the hay, grain, and grass now growing or standing or being on the farm now occupied by said Ely D. Austin, in said town of Davenport; all other crops of whatsoever kind or nature, now growing or being on said farm; also all the calves now owned by said Ely D. Austin, and kept on said farm."

At an early stage of the trial, the defendant Harvey Austin moved that the complaint be dismissed, "upon the ground that the case does not state a cause of action as against the defendant Harvey Austin." This motion was denied, and the defendant excepted. At the close of the evidence the defendant renewed his motion for a dismissal of the complaint, and in response to the motion the court observed: "I have a good deal of doubt whether this action can be maintained. Here is the point I have been struggling with. There is no question but this was rented, and whatever there was about it. The crops, if they were retained at all, were retained as security for the payment of the rent, the title of the property being in the tenant, and that is true, if it was simply taken as security. This mortgage never having been filed, or the lease never having been filed, the serious question in the case is whether another person might not take the mortgage, as creditor, and file it, notwithstanding he knew the terms of the lease, that is, certain terms of the lease,—whether he would be so far held to have notice as that it would prevent him in good faith securing the payment of his own debt. Then there is another serious question, and that is whether there is any security in the lease at all so far as this hay is concerned,—whether there is anything in the lease going far enough to cover this question of hay,—the only thing about which there is any conflict in this action. Now, my present recollection of that lease is that it does not include the hay, unless there is something in it that I have overlooked. * * * The evidence there is no question about in the case. This man tells the manner in which he took the chattel mortgage. There is really no conflict about it. He says he was there when this lease was drawn, and that he heard it read, but that he didn't understand at that time that the lease covered this hay; nor I don't think the contract does, either; and, if that is so, it would necessarily be the end of the case. But it is not my purpose to decide that question, without looking at the case more carefully."

By the terms of the lease, the plaintiff let to Ely D. Austin the farm for the term of one year, with certain personal property therein mentioned, and in the lease it was stipulated, viz.: "Said party of the second part hereby covenants and agrees to pay unto the said party of the first part the annual rent or sum of $250, payable in the fall, when the butter made on the place is sold, but such butter is to belong to and be the property of said party of the first part until said rent is paid; and to quit and surrender the premises, at the expiration of the said term, in as good state and condition as they were in at the commencement of the term, reasonable use and wear thereof and damages by the elements excepted." It is further provided in the language of the lease, viz.: "The party of the first part agrees to keep the cows in good condition until grass in 1887, and the party of the second part to keep said cows in equally good condition from that time to grass in spring of 1888. The party of the second part is to have all the straw on the place, and one-half of the grain now on the place, except three bushels of wheat and two loads of

straw; and party of the first part is to have the title to said grain until the rent is paid."

We have attentively read the language of the lease, and find no words therein which transferred the hay to the landlord, or, in terms, gave him a security upon the hay raised upon the farm during the running of the lease. We are therefore of the opinion that at the commencement of this action the plaintiff had no legal title to, or equitable interest in, the hay, by way of security for the non-payment of the rent. We may add, in the language of LAN-DON, J., in *McCombs* v. *Becker*, 3 Hun, 342, in dealing with a similar question, that the difficulty with the plaintiff's case is "that he did not, by his agreement with his tenant, provide that the title to the hay should remain in him. He made such an agreement as to the butter and cheese and grain, and this agreement as to them discloses more strikingly the lack of it as to the hay. The tenant simply agreed 'to take care of the cows,' and, in case the hay raised upon the demised farm should fail to be sufficient to winter them, his landlord should supply the deficiency, at the rate of $3 per ton, and if there should be a surplus the landlord should have it, and pay the tenant $3 per ton for it. So long as the tenant 'took good care of the cows,' the landlord could not complain of the disposition he made of the hay. If he sold it, and starved the cows, the landlord's remedy would not be against the purchaser of the hay, but against the tenant for condition broken, in not taking good care of them." The case from which we have just quoted was cited with approval in *Hawkins* v. *Giles*, 45 Hun, 318, (decided by this court in July, 1887.) In *Hawkins* v. *Giles, supra,* the lease contained a provision, among others, that the lessee should feed out all the fodder on the farm that was raised on said farm, and should winter the cattle on hay, through to grass, in the spring of the year in which the lease terminated; and under that lease we held "that the title to hay raised on the farm was in the tenant instead of the landlord;" and for that conclusion FOLLETT, J., cited numerous cases in his opinion. In deciding *Smith* v. *Taber*, 46 Hun, 313, we said nothing inconsistent with the doctrine of the case of *Hawkins* v. *Giles, supra,* and I carefully stated in the opinion that the contract under consideration contained "language adequate to create a lien on 'all the personal property on said land, or thereafter brought on' to it, and 'all the personal property and crops raised and to be raised on said land;'" and that the language further stated that "the lessor 'shall have the title to all the personal property, of whatever kind, raised, made, produced, kept, put, or used upon said farm, and he shall have the right of possession thereof at any time, and such title and right of possession is vested in said Smith as collateral security for the faithful performance of all the covenants.'" We are therefore of the opinion, upon the facts appearing in this case, that the plaintiff was not entitled to restrain the tenant's mortgagee or vendee in taking possession of the hay.

2. Plaintiff was not a judgment creditor of Ely D. Austin, nor was he a subsequent purchaser from him of the hay. He was therefore not in a situation to assault the validity of the chattel mortgage held by the appellant. *Allyn* v. *Thurston*, 53 N. Y. 622; *Sullivan* v. *Miller*, 106 N. Y. 635, 13 N. E. Rep. 772. We think there should be a new trial. Judgment reversed on the exceptions, and a new trial ordered, with costs to abide the event. All concur.