PERRY-MASON SHOE CO. ET AL. *v.* W. G. SYKES.

1. GENERAL ASSIGNMENT. *Receivership. Replevying goods. Practice. Decree.*

   Where, after a general assignment, the seller of goods, seeking to reclaim them as having been fraudulently purchased by the assignor, is permitted by the court administering the trust to take the goods upon executing a forthcoming bond, and, on a cross petition of creditors, the court holds the assignment void, it is proper to award cross petitioners a decree against such seller and his sureties for the return of the goods, or, in the alternative, a personal decree for their value.

2. SAME. *Expenses. Counsel fees of receiver. When allowed. Code* 1892, §582.

   Section 582, code 1892, providing for compensation to receivers for necessary expenses, refers only to such as are incurred in benefiting or preserving the estate. Hence, the assignee in a general assignment, acting as receiver, should be allowed counsel fees incurred in successfully defending the assignment or preserving the assigned property, but not fees incurred in an unsuccessful defense of the assignment against creditors on whose petition it is set aside as fraudulent. This is so, whether the assignment be held void for actual fraud or for merely failing to comply with the statutory requirements. *Kelly* v. *Davis*, 37 Miss., 76, cited.

3. SAME. *Attack upon assignment. Duty of assignee. Indemnity.*

   The assignee-receiver is under no legal duty to defend, at his own expense, an assignment when attacked, but he should give notice to the creditors interested to defend or secure from them indemnity against expenses necessary in the defense.

4. SAME. *Attorneys for receiver representing preferred creditors.*

   Where a general assignment is attacked as fraudulent, there is no impropriety in counsel for the receiver also representing creditors who are preferred in the assignment and seeking to uphold it.

5. SAME. *Compensation of receiver.*

   The assignee in a general assignment who, under chapter 8, code 1892. is also receiver, and acts also as manager of a business, may be allowed a gross sum for his entire services as receiver and manager. *Lichtenstein* v. *Dial*, 68 Miss., 54.

FROM the chancery court of Monroe county.

R. C. BECKETT, ESQ., Special Chancellor.

The opinion states the case.

*Clifton & Eckford,* for appellants, Blacker, Gerstle & Co.

The receiver is only authorized to employ counsel and charge the trust estate with attorney's fees where the litigation is for the protection and benefit of the estate.    20 Am. & Eng. Enc. L., 189, note 2; *Bank* v. *Duncan,* 52 Miss., 740; 16 Wall., 218; 96 Am. Dec., 488; 2 Story on Eq. Jur., 36; 4 Gratt., 208; High on Receivers, § 865.    The law does not contemplate that the receiver shall pay attorney's fees for defending the assignment when there are in court preferred creditors represented by attorneys asserting the validity of the assignment.    The receiver has nothing to do with the issue involved or validity of the assignment.    The trust is to be administered by him, whether the assignment be good or not.    If held good, he must be governed by the directions of the assignment; if set aside, he administers the estate as directed by the statute.    It is as just that the receiver should pay the attorneys' fees of the creditors who successfully attacked the assignment by cross petition, as to pay the attorneys of the preferred creditors who unsuccessfully attack it.    There is no requirement that the receiver shall answer the cross petition.    He is a mere stakeholder, without interest in the litigation.    He should protect the estate from all unnecessary litigation, but should not participate in a conflict between creditors over the trust fund.    He can only be allowed counsel fees for preserving the estate for the successful parties.    20 Am. & Eng. Enc. L., 189; Edwards on Receivers, 93; 6 Paige, 215; 8 Col., 317; High on Receivers, 216.    It is contended that there is identity of interest between the receiver and Mrs. Howard, because it was the receiver's duty to defend the assignment, and, in doing so, to show the validity of her debt, and that, as there is no conflict, it was legitimate for both to employ the same attorneys.

The statute, however, requires each creditor to establish his own claim.

*Houston & Reynolds*, for appellant, Perry-Mason Shoe Co.

*Sykes & Bristow*, for appellee.

The statute having made the assignee receiver, he is entitled to expenses as ordinary receivers.   Code 1892, §§ 119, 582; 133 U. S., 78; 20 Am. & Eng. Enc. L., 171.   The allowance was within the discretion of the court, and will be sustained unless it appears that the discretion was abused.   *Lichtenstein* v. *Dial*, 68 Miss., 54; High on Receivers, § 783; Beach on Receivers, § 774.

The bill of exceptions having been excluded, the point that the compensation allowed was excessive cannot be considered. The only question remaining now is whether, under any conceivable state of facts arising under the record, the allowance can be held legal.   *Bernheim* v. *Brogan*, 66 Miss., 184.   That the receiver may be allowed compensation payable out of the estate in his hands, has been expressly decided in *Memphis Grocery Co.* v. *Leach*, 71 Miss., 959.

.   Whether it was improper for the counsel of the receiver to represent the preferred creditors must depend upon whether the interests represented were antagonistic.   The interest of Mrs. Howard and that of the receiver were identical, each seeking to uphold the assignment.   See High on Receivers, § 217; Beach on Receivers, § 751.

*George C. Paine*, on the same side.

WHITFIELD, J., delivered the opinion of the court.

.The Perry-Mason Shoe Company, in its original cross petition, states that it "submits to the jurisdiction of the chancery court in respect to all litigation and liability growing out of the bond given in this cause," and, in its bond, obligates itself to "pay, to whomsoever the   .   .   court shall order, the dam-

ages," etc.    There is; therefore, no error in the alternative direction to pay Elkin and Goodbar Shoe Co. $561.20

The original cross petition of the Perry-Mason Shoe Company, "seeking," in the language of the chancellor in the final decree, "to rescind the sale of certain goods, and replevy the same," is the one dismissed, not the amended cross petition asking the fixing of a lien and personal decree against W. E. Howard for $1,055.45 worth of goods alleged to have been sold as a "different lot of goods" from the lot replevied.    On the return of the case into the court below, such personal decree should be entered.    The case is still pending there.    There was no error, in this view, in not entering the decree on the amended cross petition still pending.

On the merits the chancellor must have found, as facts, that the representations made by Howard to Perry were made not to induce the sale of goods, but to secure an extension of time on past-due indebtedness, for the payment of which Perry was then making very exigent demand—threatening suit; that the goods sold by the agent, Craddock, were sold before, and not on the faith of any such representations, if then made "in general conversation" by Howard; and that the goods originally sold, and those sold through Craddock, were not sold in reliance upon the reports of the commercial agencies.    We cannot say that these findings of fact are unwarranted.    This disposes of the appeal by the Perry-Mason Shoe Company.

The appeal of Blacker, Gerstle & Co. (it is not a cross appeal) questions the correctness of the chancellor's action in allowing the sums set out in the decree to the receiver and assignee as compensation for his services as receiver and assignee; to the receiver and assignee as attorney's fees, and as compensation for W. E. Howard, for services as clerk.

The assignment was set aside, the debt preferred by Howard in favor of his wife being void under § 1178, code 1880, the chancellor finding that both Mr. and Mrs. Howard acted "in perfect good faith."    The bill of exceptions has been stricken from the

record, and we can only look to the record, aside from the bill of exceptions, in determining as to the propriety of the court's action on these points.

As to the allowance made to the receiver for Howard, we are not prepared to say it is unreasonable, in the absence of the bill of exceptions. Respecting the amount decreed to W. G. Sykes, as receiver, the chancellor manifestly made the allowance as a gross sum for the entire service as receiver—not as part for salary as clerk, and part as commissions; and this, as to the mode of fixing his compensation, was correct, the receivership being one "in which the receiver was at once receiver and manager of a business." *Lichtenstein* v. *Dial*, 68 Miss., 54. As to the reasonableness of the compensation, as to amount, in the absence of a bill of exceptions, and "in view of the facts of the case, and the duties and responsibilities of the receiver," we cannot say the chancellor erred in the exercise of the large discretion committed to him in such matters. *Bernheim* v. *Brogan*, 66 Miss., 184.

More difficulty is encountered in the consideration of the allowance of the attorney's fees to the receiver and assignee. We concur entirely with the learned chancellor in holding that it was perfectly proper, under the circumstances of this case, for the attorneys of the receiver and assignee to accept, subsequently, employment by Mrs. Howard, the preferred creditor. The service rendered was in all respects the same—identical throughout—with that which would have been necessary to be rendered by the attorneys, had Mrs. Howard not been in the case. "The validity of her debt went to the whole assignment," as correctly observed by the chancellor. High on Receivers (3d ed.), § 217; Beach on Receivers, § 263.

Leaving entirely out of view, however, the bill of exceptions, it clearly appears—especially from the statements in the " petition for assignee and attorney's fees," and the " receiver's final report"—that the amount allowed manifestly embraced, in part, fees for services in defending unsuccessfully the suits

brought by the cross petitioners, Blacker, Gerstle & Co., and others, to declare the assignment void. The former recites that, "soon after the filing of his [assignee's] petition, numerous cross petitions were filed by various parties claiming to be creditors," etc., "setting up various claims to and liens upon the property in petitioner's hands as an officer of this court, whereby divers issues were taken requiring adjudication by this court," and that said attorneys represented "this receiver on the trial of the said issues," etc.

The question is thus squarely presented, in the construction of chapter 8 of the code of 1892, where an assignment for the benefit of creditors is declared void, not for actual fraud, but by reason of failure to comply with some positive requirement of statute law, can the assignee—regarded in the character of assignee or of receiver—be allowed fees for attorney's services rendered in an unsuccessful defense of the assignment against cross petitioning creditors, who set aside the assignment, and secure prior liens, under § 121 of the code of 1892, such fees to be charged upon and payable out of such assigned property on which such liens have thus been fixed?

It will serve to clear the real point under review of embarrassment to say the services of the attorneys of the assignee and receiver rendered in successfully defending the claims made by Bolton and the Perry-Mason Shoe Company in their cross petitions, whereby they sought to rescind the sales, and recover the specific goods, were services for which compensation was properly allowable, as having been rendered in litigation resulting in the preservation for all entitled to the property of the assignor, either under the assignment or the cross petitions. These services resulted in preventing the withdrawal from the property assigned of a part of it, open alike to those protected by the assignment, if it had stood, or to those who, as successful cross petitioners, fastened leins upon it. The case of the *Haydock Carriage Co.* v. *Pier*, 78 Wis., 582, is decisive of this point. Fees were allowed the assignee's attorneys in that

case for successfully defending a replevin suit seeking to with-
draw from the property assigned a part of it. The court say:
"Such defense was made for the purpose of saving the prop-
erty there in controversy to the creditors of the assignor. The
expenses incurred by her in making such defense should be re-
imbursed" to the assignee "out of the proceeds of the assigned
property. She must be allowed all her necessary disbursements
in that action in both courts, including attorneys' fees." The
principle underlying this allowance is clear.

In *Woodruff* v. *N. Y., L. E. & W. Railroad Co.*, 129 N.
Y., p. 31, the trustee—one who had "acted the part of a trus-
tee," in Justice Bradley's language—was allowed compensa-
tion for his own "time, labor, trouble, and traveling expenses,"
and his attorneys' fees, all incurred in a successful litigation of
thirteen years' duration, resulting in the "creation" and pres-
ervation of the fund. To the same effect are *Daniel* v. *Fain*,
5 Lea (Tenn.), 258, the case of a *quasi* bill of interpleader,
filed in the preservation of the estate; *Clark* v. *Sawyer*, 151
Mass, 64, a case where the assignee made advances in good
faith to pay off an insolvent's workmen before accepting an
assignment, and subsequently acting under the assignment,
which was set aside, not for any fraud with which the assignee
was connected, and where the court say: "The jury were in-
structed that the assignment was void as against the plaintiff,
and that any legal services rendered to carry out or maintain
it, could not be paid for out of the estate, but that the defend-
ant had a right to pay a reasonable sum for services, in good
faith, to aid him in protecting the rights of all parties, and to
enable him so to conduct the business intrusted to him that the
interests of all parties affected by it should be guarded. We
have no doubt the instruction was right in what it disallowed.
*Hastings* v. *Spencer*, 1 Curtis, 504. With more hesitation, we
are of opinion that it does not appear to have been wrong in
what it authorized the jury to allow the defendant. . . The
instructions to the jury, as we understand them, allowed the

defendant only expenses incurred in the preservation of the property. What the legal services were we do not know, but we cannot say that such services might not be necessary to protect the rights of all parties interested in the estate," citing many authorities.

In *Hunker* v. *Bing*, 9 Fed. R., 277 (cited in the fifth edition of Burrill on Assignments, in note 7, at page 666, but omitted, strangely, in the sixth edition), the court say, in a case where the assignment was declared void for failure merely to comply (as here) with the positive requirement of statute law, to file proper "inventory and schedule," after disallowing commissions to the assignee: "It does not follow, however, that all remuneration should be denied to the respondent. No claim under the void assignment . . can be regarded. But for the other acts performed by the respondent, in the way of disbursements and services, which, considered independent of the assignment itself, were lawfully rendered, and were beneficial to the general body of creditors, or which would have been necessarily incurred by the assignee in the care of the property, or in its conversion into money, compensation should be allowed. The express assignment affords the defendant no protection. He must bear all the charges and disbursements pertaining to it. . . But as it was not illegal for the debtors, by parol, to put their property into the possession of the respondent, as their factor or agent to sell it, and distribute its proceeds among their creditors, though subject to be withdrawn by the debtors at any moment, on the payment of charges, and subject to the attacks of execution creditors, or to proceedings in bankruptcy, so the respondent may be regarded as having done what he did under an implied request to that effect, and to have acquired thereby an equitable lien upon the property in his possession for his necessary services and disbursements therein, which should be respected in bankruptcy, so far as they have been necessary and beneficial to the general creditors, or such as the assignee in bankruptcy would otherwise have

received." And again: "The items charged for attorneys' fees must abide by the same rule. So far as they depended upon or related to the void assignment, they must be disallowed. So far as they were expenses necessarily incurred for the preservation of the property or collection of the debts, they should be allowed, to an amount which is reasonable and just." The same principle is announced in *Hastings* v. *Spencer*, 1 Curtis, 507, where it was said that an assignee having claims against the assignor for money paid out in preserving the fund, may retain it, though the assignment is avoided, for the reason that " he is under no necessity to set up the deed. He has the right of retention, to that extent, if it were wholly invalid, or had never been made." And the same doctrine on this point is clearly set forth in the dissenting opinion of Eakin, J., in *Hunt* v. *Weiner*, 39 Ark., 70, which, as to this point, is sound, the court having improperly refused, as we think, to allow charges clearly incurred in the preservation of the property. The parties ultimately entitled cannot take the property benefited and preserved, and decline to pay such charges, whether for services rendered by the assignee or by attorneys for him, as clearly were rendered in benefiting and preserving the property.

But can the assignee and receiver be allowed fees for attorneys for services rendered in unsuccessfully resisting the cross petitioners who assailed the assignment as void, and had it declared void? The services thus rendered were not in preserving the property assigned for all creditors, but in directly resisting the claims of cross petitioners in manifest hostility to their claims. To pay them out of the fund assigned, after the assignment is vacated, and the right of the cross petitioners to final payment over other creditors out of such fund has been established against the opposition of the assignee in such litigation adverse to the cross petitioners, would be to make the successful litigant pay the counsel of his adversary out of the very property the right to which was the question settled by the litigation. Manifestly, this cannot be done.

In Burrill on Assignments (sixth edition), p. 519, it is said: "A trustee is entitled to be reimbursed his expenses, though the trust be subsequently declared void, if he have acted in good faith," and many authorities are cited in support of the proposition in note 7. A careful examination of all these authorities shows that the statement lacks precision. *Hawley* v. *Eames*, 16 Wend., 61; *In re Wilson*, 4 Barr, 430; *Stewart* v. *McMinn*, 5 W. & S., 100, and *Rouse* v. *Bowers*, 108 N. C., 182, simply announce the well-settled rule that the assignee will be protected in all payments made to "*bona fide* creditors of the assignor, in pursuance of the assignment, before any other creditors have obtained a lien (general or specific, legal or equitable) upon the assigned property," as it is put by this same author in § 411, where these same authorities are cited, and in the payment of expenses incurred in preserving the fund.

In *White* v. *Hill*, 148 Mass., 398, the property assigned was a printing press, and there were uncompleted contracts partly executed. The assignee, out of his own pocket, contributed the means to complete these contracts, for "the purchase of materials [p. 399] and the payment for labor, rent, other expenses," and the court said: "If the assignees are entitled to receive all the proceeds of the expenditures made by Kimball, it is clear that they get not only the property belonging to White (the assignor), but also a considerable amount of the property of Kimball (the assignee). This is not just, and we think that Kimball is entitled to retain any reasonable and necessary expenditures made by him in good faith under his contract with White." Clearly, this case is one touching disbursements made in benefiting and preserving the property, and falls under the point first discussed in this opinion as to the attorneys' fees in defending against the claims of Bolton and others to rescind. This was, it is to be noted, an assignment made in good faith.

In *Hunt* v. *Weiner*, 39 Ark., 70, it is expressly ruled that, "where an assignment is set aside as fraudulent by reason of

some particular provision in it, it is set aside entirely, and trustees, though creditors, are not permitted to retain any part of the property for the purpose of paying themselves, but are required to account for all that come into their hands under the assignment," as to which we express no opinion, remarking only that the converse of this precise point is held in *Hastings* v. *Spencer*, 1 Curtis, 507. But the Hunt case also holds that no "charges, commissions or expenses should be allowed for any services or disbursements, except those incurred in preserving the property," not even for premiums paid for insurance and "clerk hire," after the filing of the bill assailing the assignment. It will be seen how far this case is from supporting the citation. In *Carriage Co.* v. *Pier*, 78 Wis., 579, the court say of attorneys' fees sought to be recovered for services in unsuccessfully defending the assignment: "Should the defendant [the assignee] be reimbursed out of the moneys in her hands for her costs and disbursements in this action in this court? We think not. Were she, thus reimbursed, it would nearly absorb the fund, leaving the larger portion of the plaintiff's judgment against Bartell, the assignor, unpaid. Hence, the effect would be to compel the plaintiff to pay such costs and expenses, although he has obtained a judgment therefor in this court against the defendant. Such costs and expenses were not incurred for the benefit of all the creditors (of whom the plaintiff is one), but in direct hostility to the interests of the plaintiff," and this in a case, let it be noted, where the assignment had been held void because the bond required was void, as having been executed by a married woman—not for actual fraud. The assignee had acted "in perfect good faith, under the direction of the court, believing the assignment valid." *Clark* v. *Sawyer*, 151 Mass., 66, *supra*, draws the same distinction.

In *Hunker* v. *Bing* (a well-considered case), 9 Fed. R., 280, all "commissions" were denied, and only those expenses for assignee's and attorneys' services allowed, rendered in the clear

preservation of the fund, although there was no fraud, and the assignment was only declared void because, as here, of failure to comply with a positive requirement of statute law—a failure to file inventory and schedule. The court says (pages 280, 281): "Upon these facts it is clear that the defendant can have no legal or equitable claim to 'commissions,' as assignee. The assignment became, after the lapse of thirty days, through the remissness of the assignee, not merely voidable, but void, without suit or other direct proceeding to avoid it. Therefore, in contemplation of law, there was neither assignment nor assignee; neither trust, trust property, nor trustee. The assigned property reverted, by operation of law, to the assignors. It became liable to the attachments and executions of creditors. . . No claim in the character of assignee can therefore be allowed to the defendant; nor for the period of thirty days, during which the assignment was in force (*In re Croughwell*, 17 N. B. R., 337), can any claim be entertained for commissions, since the assignment subsequently lapsed and became void, through what must be legally held to have been the fault of the assignee himself in not filing such a schedule as he could." And the same rule was applied as to attorneys' fees (page 283). *A fortiori* cannot such fees be allowed the attorneys, or such commissions the assignee, when the assignment is declared void for actual fraud, especially if participated in by the assignee, as in *Solinsky* v. *Bank*, 85 Tenn., 368, or as to which the circumstances are such as to charge the assignee with notice of such fraud, as in *Hastings* v. *Spencer*, 1 Curtis, 507, 508—a fine case. Mr. Burrill states the true rule in section 381 (6th ed.), page 527. By far the best considered case on this whole subject, which we have been able to find, is the case of *Mayer* v. *Hazard*, 49 Hun, 222, the reasoning in which we entirely approve throughout. There counsel fees and assignee's disbursements were asked to be allowed out of the assigned fund, in two classes of cases—one in which the assignee had successfully resisted attacks upon the assignment, in which they were allowed; and

one in which the assignee had unsuccessfully resisted such attacks, in which they were disallowed.    The court say, as to the latter (49 Hun, 225): " By the judgments recovered in those suits, the conclusion was reached by the court, and sustained on appeal, that the assignment was unlawful and fraudulent, and the defenses made by the assignee were of no service or benefit whatever to the assigned estate.    And where services may be performed by an assignee  .  .  the authorities have never proceeded so far as to sanction a claim made by him for reimbursement, on account of such service, out of the assigned property.    On the contrary, the expenditures allowed to him have been limited to those which are incurred  .  .  on behalf of the assigned estate, and for its benefit.    When they result otherwise, and prove to be disastrous instead of beneficial, then the rule which is sanctioned by the authorities by implication decidedly excludes their allowance.    This rule has been supported by the fact that, when the successful creditor commences his action to set aside the assignment as fraudulent, he acquires a lien upon the debts, property and equitable interests of the debtor, and the effect of acquiring that lien, in judgment of law, is to entitle him to the benefit of the assigned property for the payment of his indebtedness, as of the time when the action itself to set aside the assignment was commenced."    And the court proceeds to review authorities supposed to warrant such allowance, and shows they are only applicable in cases where the compensation is for such " acts of the assignee, or persons employed by him," as are " for the benefit of the assigned estate."

Section 582, code of 1892, refers alone to such compensation and expenses as are proper to be awarded as having been earned in preserving the estate in the discharge of a receiver's ordinary duties, as does § 119.    And this rule must be the same whether the assignment is void for actual fraud or for failure to comply with some positive requirement of statute law.    The good faith of neither assignor nor assignee, nor of both, can avail to supply the lack of legal validity in the as-

signment in the latter case. As said in *Hunt* v. *Weiner*, 39 Ark., 70, "the assignees are chargeable with notice of the contents of the instrument under which they claim, and must be deemed cognizant of and participators in the unlawful [not necessarily fraudulent in fact] object," citing authorities.

This rule, too, of allowing the assignee and receiver only such counsel fees as were for services rendered in benefiting and preserving the property assigned, is strictly in harmony with § 119 of the code of 1892, aided by § 582. The "compensation and necessary expenses" referred to in § 582 are those earned in benefiting and preserving the trust estate for the parties ultimately entitled; and is in perfect harmony also with *Grocery Co.* v. *Leach*, 71 Miss., 959, where the counsel fees were allowed the assignee and receiver for the services of attorneys who had successfully defended the assignment. No counsel fees for such defense would have been allowed there had the assignment been annulled, beyond such as were rendered in preserving the estate. "Qualification of the assignee," preparing his "petition" and "inventory," were services of this character, anyway.

The true test, therefore, as to whether expenses incurred by an assignee and compensation claimed by him for services rendered, whether by himself or his attorneys, are to be allowed out of the estate assigned, is not whether the assignment was set aside for actual fraud of the assignor, of the assignee or of both, or for failure to comply with some requirement of law, statute or common, but is to be found solely in the nature and character of such expenses and such services as affecting beneficially or injuriously such estate. If such expenses and such services benefit such estate, better it, enhance it in value, preserve it for those ultimately adjudged entitled, whether under the instrument according to its terms, or against the instrument as successful cross petitioners assailing the instrument, then, in every such case, such ultimately entitled parties must take the estate charged with the payment of such expenses and

such services.  They cannot take the estate thus bettered, improved, enhanced in value or even preserved merely, without paying for such expenses and the services which have so preserved, bettered or improved it.  This is the manifest justice of such situation, and the obligation thus to pay arises not out of the instrument at all, but, quite independently of the instrument, is raised or implied by the law out of such situation in furtherance of manifest right and justice.  In this view, also, it is quite clear, as held by Eakin, J., in *Hunt* v. *Weiner*, 39 Ark., *supra*, that such expenses and such services are not to be measured—as to time—by the fact that they were incurred or rendered before or after the assignment may be declared void, but simply and only by the extent to which—no matter as to the date of setting aside the assignment—they have, as stated, preserved or bettered the estate.  This is the principle of *Thompson* v. *Phœnix Insurance Co.*, 136 U. S., pp. 294, 295. Of such a test, no party can complain.  Founded in reason, working out right, it must be sound law; and, as seen, it is the clear and well-settled result of all well-considered authorities, including *Grocery Co.* v. *Leach*, 71 Miss., 959.

If it be said that, however true all this may be as to the ordinary assignee, it cannot be of the assignee who becomes a receiver of the court under chapter eight of the annotated code of 1892, a careful consideration of that chapter will show that the principles announced are strictly applicable to the assignee-receiver therein referred to.  He does not cease to be assignee by becoming, also and additionally, the receiver of the court. His functions as receiver supervene, but do not displace, his duties as assignee.  Whether the assignment be sustained or annulled, is immaterial to him as receiver.  In either case, and whether there be any contest over the assignment at all or not, as receiver he proceeds with the duties of a receiver under the orders of the court—pays taxes, insurance charges, keeps and preserves the estate for those ultimately entitled.  If the assignment be sustained, he distributes the funds realized to the

beneficiaries named in the assignment, according to the terms of the assignment; if it be annulled, he distributes such funds to the successful cross petitioners, according to the statute, said chapter eight. Over the administration of the estate, in either case, as receiver, he presides, discharging in its preservation, whether for those claiming under or those claiming against the assignment, the duties of a receiver under the superintendence of the court. As such receiver, he should take no part in contests, if inaugurated, but stand indifferent between, concerned merely in caring for the estate. And, for these duties of administration, the things done directly by himself or through attorneys for him, in preserving the estate—duties of pure receivership proper—he is to be allowed compensation on the same principles obtaining ordinarily as to receiverships. He should not employ counsel as receiver to defend the assignment. If he does, he takes the risk of reimbursement for fees and costs, to be allowed if successful and the estate is benefited, otherwise not. No matter in what form the assault is made on the instrument, whether by preferred or unpreferred creditors; whether with purpose wholly to annul, or merely to strike from it the preferences, under § 124; he is at all times, in his capacity as receiver, a stakeholder, a custodian merely, of the fund for those entitled. It is true he is to be made a party defendant to the cross petitions. But creditors "may be" also. If the assault upon the instrument is made with the purpose of wholly setting it aside, he and the assignor may remain the sole defendants— rather, however, in his still subsisting character of assignee than of receiver. The superadding to his character of assignee, in which he has usually defended heretofore, of the duties and character of a receiver, for purposes of pure administration of the trust, is for the said latter purpose alone; and it was not meant that, when defending, he was not to be regarded in his still subsisting character of assignee. Treating him, then, when made defendant, as defending as assignee, he would be the only necessary party defendant to a cross petition seeking to annul

the assignment. See *Hunt* v. *Weiner*, 39 Ark., 70, and the authorities cited, and *Trustees* v. *Greenough*, 105 U. S., 527. But, though the only necessary party defendant, creditors "may be"—other creditors "may be"—not only when the object of the cross petition is, claiming under the assignment, to enforce it (*Hunt* v. *Weiner*, *supra*), but "may be" whenever the assignee, not willing to incur the risk of costs and fees incurred in an unsuccessful defense, shall (as, in prudence, he always ought to) notify the other creditors to defend, or to indemnify him against the loss of such expenses and fees. He "may" so indemnify himself; and the parties interested to sustain the instrument will, manifestly, heed his notice and defend themselves, or give him such indemnity. And his right to this indemnity is the complete answer to any apparent hardship supposed to arise from the construction of this chapter eight which we are announcing. It has, besides, been expressly so decided in the finely reasoned opinion hereinbefore quoted (*Mayer* v. *Hazard*, 49 Hun, 222), where the court says, at page 227 (speaking of fees asked to be allowed the assignee for attorneys for services in unsuccessfully defending the assignment): "No good reason appears to support these charges, for the services and disbursements on account of which they were made were hostile to the judgment creditors, who have succeeded in their actions; and for such hostile proceedings they cannot, on any sound principle, be held to be accountable. The services performed and the disbursements made were for the benefit of the creditors entitled to be paid out of the estate, under the assignment, and that benefit would form a legal foundation for incurring a liability on their part to repay the expenditures. The assignee is not without protection, because he cannot be allowed to charge these expenditures against the assigned estate, for it was within his power, when these actions were brought, to call the creditors together under the assignment, who were interested in maintaining it, and secure an obligation from them to indemnify him against any expenditures

he might make in defending the actions, and in that manner endeavoring to promote their interests. That is what he should have done; and, by adopting that proceeding, he would either have protected himself against all possible loss, or have been absolved from the obligation of resisting the actions in efforts made to sustain the assignment. These creditors, and not the judgment creditors, are the persons to whom he should have placed himself in the situation to look for his expenditures, in case of an adverse result in the suits; and his failure to do that presents no legal ground for charging these expenditures on the assigned property, and in that manner practically defeating the actions brought by the judgment creditors. Any other or different rule would operate as an inducement to the assignee to carry on protracted litigations at the expense of the estate, and in that way diminish the amount which should be available to the successful judgment creditors, or perhaps exhaust it altogether.'' See, as illustrative of the principle, *Kelly* v. *Davis*, 37 Miss., 76.

The decree on the appeal of the Perry-Mason Shoe Company is affirmed. The decree on the appeal of Blacker, Gerstle & Co. is affirmed as to the compensation awarded W. E. Howard and W. G. Sykes, receiver and assignee, and is reversed as to the allowance for attorneys' fees in defending unsuccessfully against the cross petitions upon which the assignment was vacated, and remanded, with directions to the court below to allow the assignee and receiver a reasonable sum for attorneys' fees in the receivership proper for services rendered in the care and preservation of the estate, and for services rendered in defending against the cross petitions of Bolton and the Perry-Mason Shoe Company, seeking to rescind the sales and withdraw specific property from the estate. The costs on this appeal to be equally divided.

*Decree accordingly.*