ALONZO J. WEEMS ET AL. v. LOVE MANUFACTURING COMPANY ET AL.

1. JUDICIAL SALES. *Caveat emptor. Warranty. Exception.*

   The general rule is that judicial sales are made without warranty, and the doctrine of *caveat emptor* is applicable; but this rule should not be enforced so as to compel a purchaser to pay his entire bid after he had been made to satisfy a prior demand against the property, where the whole litigation and sale had proceeded upon the idea that the property was sold freed from incumbrances, and that the proceeds were to be devoted to their satisfaction.

2. ASSIGNMENT FOR CREDITORS. *Receiver. Sale. Code* 1892, *ch.* 8.

   In the case of a general assignment, administered under code 1892, ch. 8, where previous attachments have been levied upon the property, a sale made by the assignee-receiver should be of the property freed from the lien of the attachments, and the proceeds should be applied by the court to the payment of the attaching creditors if they prove prior right, they being parties to the chancery suit.

3. SAME. *Assignee-receiver. Dual relation.*

   Under code 1892, chapter 8, the assignee in a general assignment, who has given bond, etc., occupies a dual relation. *Perry-Mason Shoe Co.* v. *Sykes*, 72 Miss., 390, approved.

4. SAME. *Fraud. Penalty.*

   The only penalty inflicted by the law upon one who executes, or procures the execution to him, of a fraudulent assignment, is the loss of the benefits of the instrument.

FROM the chancery court of Lauderdale county.

HON. N. C. HILL, Chancellor.

The appeal in this case, which was denied by the chancery court, but was granted by the judges of the supreme court, was prosecuted by Weems and others, from the decree of the chancery court ordering them to pay into court the sum bid for property sold by the receiver.    The opinion states the facts.

*J. A. P. Campbell,* for appellant.

The assignee filed his petition as the statute requires, making the assignor and all creditors parties, and the effect was to draw to the chancery court the administration of the assets, and when the court ordered the property sold, it did so for the purpose of substituting the proceeds of the sale for the property.

There is no denial of the power of a chancery court to enforce its decrees, and prevent trifling with its proceedings—in proper cases to punish for contempt, but not to use this power oppressively, or as a means of imprisoning for debt, in violation of the constitution, and on proper grounds to order a resale of property; but in this case, with its peculiar features (probably never exhibited before, and not likely to be seen again), it is a vain and useless thing, and a great injustice to Weems, the surety of the court's officer, who has already paid out much more than the sum of his bid in discharge of a judgment against the receiver who sought to save the property from attachment, to require him to pay the money into court.    The creditors would have claimed the fruits, had the receiver succeeded in the litigation, and should not be allowed to assert any higher claim than he can against Weems, his surety, who has already largely overpaid his bid.

But for the claim of the receiver, and bond by Weems as his surety, the property would not have been subjected to the control of the chancery court.    The petition of the assignee was premature as to nearly all of the property, for the petition is to be filed after taking possession (code 1892, § 117), and he did not have possession, except of a little.    Yet he filed his

petition and proceeded in his character of receiver to claim the property, give bond, and get possession, and in this condition creditors mixed in the fray. They became parties to the proceedings and should be bound by them. They succeeded in their attack on the assignment, and if there was anything beyond the sum necessary to satisfy claims on the property paramount to theirs, they would be entitled to it. But there is no surplus after satisfying the mechanic's lien for $445, and the Blalack lien acquired before the assignment was made. These are superior claims, have been paid by Weems, and are held by him. Shall he, under the history of this peculiar case, be denied his rights as a creditor, and be compelled to raise a great sum of money to pay into court, when it is manifest that he will immediately be entitled to it?

Suppose the order made to pay in the money for the court to gaze at, or to preserve the regularity of proceedings, or to maintain the court's authority, and that Weems failed to pay, and was attacked for contempt. He would be allowed to purge himself of any contempt, and to show what he has shown, and that he has been reduced to insolvency largely by what he has had to pay as surety for the receiver (really by the court, which by his suretyship got control of the property) in this very litigation, into which these creditors pitched, to get what they might out of the property thus dealt with. Would not Weems stand purged of contempt? Then, why not anticipate the result and recognize the man's rights, as they now plainly appear? Shall his rights be sacrificed or subordinated to some notion of regularity of proceedings? Shall he who stands in the favored position of a surety of the court, through its officers be subjected to the hardship and inconvenience proposed under the peculiar circumstances of this unprecedented case? Shall not justice be done now when the whole matter is before the court? Shall right and justice be subordinated to mere form? Weems made his defense, and the facts are all before the court. If there is any claim superior to his to be satisfied out of the pro-

ceeds of his bid let him be required to pay that, but to the extent that he will be entitled to claim the money, if actually paid in, let him be treated as having paid it.  Then the end will be reached and justice done.  The chancellor would not set aside the sale, for he found no ground for that.  He recognized that the sale was proper and had been confirmed, and he reconfirmed it, but ordered the receiver to take possession until money was forthcoming.  Nothing but money would do.  A resale could be justified only as a means of raising the money, but not under the peculiar circumstances of this case, where the money far exceeding the bid at the sale has been actually paid by the purchaser, for Weems was, by the relinquishment of Brown, made and treated by all concerned as the purchaser. The attention of the court is invited particularly to *Clarkson* v. *Read*, 15 Grattan, 288; *Deavor* v. *Reynolds*, 1 Bland's Ch., 50; *Camden* v. *Mayhew*, 129 U. S., 73, as illustrative of the view taken by the courts of such matters as are here involved.

*G. Q. Hall*, on the same side.

When the chancellor, in the face of the facts pleaded, established and undisputed, ordered Weems to pay the money into court, it was thereby adjudicated of necessity that Weems' defense was not good.  It was of necessity forever an adjudication of that fact.  Why?  Suppose Weems had not appealed and had declined to pay.  Could he purge himself from contempt by averring and proving what he has already averred and proved?  No.  The court would respond: "I have already ordered the money·paid into court.  I did that in the face of your answer and your proofs.  Therefore, of necessity, the order settled, so far as this court is concerned, that your alleged payments would not be treated nor recognized as payments, but only as a claim that you might propound after you had paid the money into court."  It would be a waste of words for Weems to insist that, the money being already exhausted, he had none of the court's money, and that he should not now be required,

in his present insolvent condition, to raise so large a sum and pay into court upon a mere technicality, and be burdened with the fees and expenses of procuring its repayment to him.  The very technical contention, as the argument of counsel below and the chancellor's order implies, is that Weems' rights rest upon the principle of subrogation and substitution—that he should pay the money into court and then propound his claim to it by virtue of his having paid off paramount claims against the estate; that he should then aver and prove what he has already averred and proved.  This, we respectfully submit, is the veriest sticking in the bark—the clinging to the shadow when the substance is gone.

Nor is the case at bar analogous in principle to those which hold that there can be no evasion or circumvention, and that the price bid must be paid in money, as instanced in *Blythe* v. *Hernando Bank*, 17 So. Rep., 4; *Parham* v. *Stith*, 56 Miss., 465; *Baughn* v. *Shackelford*, 48 Miss., 264; *Water Valley Mfg. Co.* v. *Seamon*, 53 Miss., 655; *Baines* v. *McGee*, 1 Smed. & M., 208; *Elliot* v. *Connell*, 5 Smed. & M., 91.  The principles settled by those cases is, that where payment is to be made something else cannot be substituted for payment—as, by taking credit on individual account instead of cash, or accepting drafts instead of money, or by treating the bid as paid and taking the note of the purchaser as for money loaned—all such cases being recognized as breaches of trust, and mere evasions of the law.  The case of *Camden* v. *Mayhew*, 129 U. S., 73, appears at first blush to bear some analogy to the case at bar, but on further scrutiny the analogy disappears.

In the case at bar, Weems actually paid the cash, and the issue presented is, whether or not the actual money paid by him to the full amount of his bid upon paramount liens under legal process—duress of the law—shall be treated as tantamount to a payment of the money into court.  There is no sort of pretense that this money was paid for any improper purpose.  On the contrary, it is recognized to have been a *bona fide* payment

*in invitum*, by legal compulsion. There was no trifling with the court, no effort at evasion or circumvention.

Act of God, superior force, and legal duress, are three things that are recognized by the courts as furnishing a complete answer for nonperformance of any legal duty.

*J. S. Ham*, for appellees.

Weems had no right to be subrogated to the rights of Blalack, even if he paid the judgment to him. He only paid his own debt or discharged his own obligation. Only a surety who has paid and satisfied the debt of his principal has a right of subrogation. Code 1892, § 3279; 24 Am. & Eng. Enc. L., 190, 191, 192, note 1 to p. 193; *Bank of England* v. *Tarleton*, 23 Miss., 173; *Bowen* v. *Hoskins*, 45 Miss., 186, 187. But even if it was conceded that Weems was a surety, still he had no right to be subrogated to the rights of Blalack, unless he had paid off and satisfied the judgment in favor of Blalack. Authorities *supra*, and *Lee* v. *Griffin*, 31 Miss., 632; *Magee* v. *Leggett*, 48 Miss., 139. Until the whole debt has been paid and satisfied by a surety, he has no right of subrogation; the creditor is entitled to all his liens and no right of subrogation exists.

Weems and Brown, being purchasers of the property at a receiver's sale, were bound to know that the receiver could sell only such title to or interest in the property as the Queen City Manufacturing Company had at the date of the assignment to Hodges, on the ninth of April, 1894. In other words, the doctrine *caveat emptor* applied to them. And they were bound to ascertain for themselves what that interest was, because the rule applies not only to the title, but to the condition of the property. High on Receivers, sec. 169 *b;* Beach on Receivers, sec. 734; 20 Am. & Eng. Enc. L. 150, 151; 9 Wheat., 616; 6 Curtis, 213; *Barnes* v. *Hamilton*, 70 Am. Dec., 584, 585, note at top of page; 10 Am. St. Rep., 40, and note to p. 45; 2 Freeman on Executions, 313*a;* *Mellen* v. *Boarman*, 13 Smed. & M., 100; *Sackett* v. *Twining*, 51 Am. Dec., 599; *Bank* v.

*Martin*, 61 *Ib.*, 350.  Weems and Brown, being purchasers at
a receiver's sale, were bound to pay the amount of their bid,
unless they could show that they were induced to buy the prop-
erty by fraud or misrepresentation as to the true condition of
the title, and that they could not, by the use of reasonable dil-
igence, have discovered such fraud or misrepresentation before
the confirmation of the sale.  *Williams* v. *Glenn*, 12 Am. St.
Rep., 461; High on Receivers, sec. 199*a;* Beach on Receivers,
sec. 732; 13 Smed. & M., 100.  A sale by a receiver does not
affect existing liens.  The property is passed to the purchaser
subject to all legal incumbrances, and he may test the validity
of all such liens, and the amount thereof.  20 Am. & Eng.
Enc. L., 151; High on Receivers, sec. 199*a;* Beach on Re-
ceivers, sec. 732.  It is not pretended by Weems and Brown,
or by either of them, that they were misled or deceived by
Hodges about the property, or the condition of the property,
or the title to it, or about the validity of the assignment, or of
the attachment which had been levied on the property.  The
sale was reported to the court and was confirmed, all parties
interested being present or having notice and opportunity to be
heard.  And the decree of the chancellor cannot be collaterally
attacked, except for fraud or other matters rendering it void
on its face.  *Bland* v. *Muncaster*, 24 Miss., 62, 152; High
on Receivers, secs. 191, 192; *Ames* v. *Williams*, 72 Miss., 760;
*Gillespie* v. *Hauenstein*, *Ib.*, 838.

*Miller & Baskin*, on the same side.

We submit that this money was a trust fund, and that the
order was eminently correct as made by the chancellor—that is,
that said money should have been paid into the court.  *Coulter*
v. *Herrod*, 27 Miss., 685.

The title of the receiver was subject to all valid and subsisting
liens at the time of his appointment.  He got only such title as
the defendant corporation had in the estate of which he took
possession.  20 Am. & Eng. Enc. L., 130, note 1.

Only such title or interest passed to Weems, by virtue of the sale by the receiver, as was possessed by the party whose interest was being sold, and a greater title could not pass, as the rule of *caveat emptor* applies, and it was for the purchaser to ascertain what the interest was that he was buying. 20 Am. & Eng. Enc. L., 150. And the sale by this receiver did not affect the prior liens of these appellees. The property passed to Weems and Brown as purchasers, subject to all legal incumbrances in favor of these appellees and other creditors, subject only to the purchaser's right to show that said liens or accounts due thereon were not correct, or were not proper charges against said property. 20 Am. & Eng. Enc. L., 151. This rule applies to the condition of the property as well as to its title, and in an action for the purchase money it is no defense, in the absence of fraud or misrepresentation, that the property was in a defective condition. 20 Am. & Eng. Enc. L., 150, 151, and note; *Hutchins* v. *Brooks*, 31 Miss., 430; *Cogan* v. *Frisby*, 36 Miss., 184; Beach on Receivers, sec. 734.

This sale by the receiver under the order of the court, having made no mention of prior liens or incumbrances, operated as a transfer of title to the said Weems and Brown, subject to the liens and incumbrances that were outstanding, with no right in the purchasers (as laid down in High on Receivers and Beach on Receivers) to contest the title of the third person or a party to the cause in which the receiver is appointed. High on Receivers, sec. 199*d;* Beach on Receivers, secs. 732 and 734.

A purchaser at a judicial sale cannot successfully resist the payment of the purchase money on the ground that he got no title, unless he can show that he was misled by the seller, and that he used all reasonable diligence, and that he could not by the use of such diligence have discovered the condition of the title. *Williams* v. *Glen*, 12 Am. St. Rep., 461. So we submit in this case that Weems and Brown purchased the property at said sale in view of the rule of *caveat emptor*, and only obtained the interest that the receiver had in said property, and,

hence, they got all they bought, and there is no excuse for their nonpayment of their bid at the sale.   But, in addition to this, these purchasers had actual knowledge of the condition of the property; they knew, because they were parties to this proceeding from its beginning, all the facts connected with the same —in truth, they were active participators in all the litigation growing out of this matter.

*Per curiam :* On the eighth day of April, 1894, one Blalack sued out an attachment against the Queen City Manufacturing Company, and caused the same to be levied upon nearly all the real and personal property of that corporation.   On the same day several other creditors also sued out attachments at law, and levied on the same property.   On the ninth of April the company made a general assignment of all its property, with preferences of certain of its creditors, to Geo. N. Hodges as assignee.   On that day the assignee filed a petition and bond in the chancery court of Lauderdale county, and thereby became receiver of said court by the operation of ch. 8 of the code of 1892.   To this petition the assignor and all its creditors were made parties defendant, as provided by law.   On the tenth day of April Hodges, as assignee and receiver, made claim to the personalty attached at the suit of Blalack, which had been valued by the officer at the sum of $8,332.50, as his property as such assignee and receiver, and gave bond in the penalty of $15,000 for the forthcoming thereof, with William T. Brown and A. J. Weems as sureties.   He made like claim and gave bonds for the forthcoming of the property attached by the other creditors, with Brown and Weems as his sureties, and, upon the execution of these bonds, the personal property seized was delivered to him.   In January, 1894, the Meridian Machine Company, claiming a mechanic's lien for work and labor and materials furnished, had filed its petition in the circuit court of Lauderdale county to have its lien enforced against certain parts of the property which was afterwards included in the assignment

made by the Queen City Manufacturing Company.  In this suit a judgment was rendered in favor of the petitioner for $422.40 on July 9, 1894.

On the twentieth of July, 1894, the Love Manufacturing Company, and certain other creditors of the Queen City Manufacturing Company, exhibited their cross petition in the chancery court of Lauderdale county, against the Queen City Manufacturing Company, Hodges, the assignee and receiver, and the creditors preferred by the assignment, seeking to vacate the assignment as fraudulent in law and in fact.

While the above named suits were pending and undetermined, several other proceedings were instituted against the receiver by other creditors, or by persons claiming to have a right superior to the assignee, as to parts of the assigned property.

In November, 1894, the Fay & Eagan Company filed a petition, averring that by the assignment there had been conveyed certain machinery of which it had made a conditional sale to the assignors, but had reserved title to the property, and that the purchase money had not been paid, and the petitioners asked the chancellor to make an order directing the receiver to return to them this property, which order the chancellor made.

One W. T. Adams also filed his petition for the restoration to him of a certain engine to which he claimed title; this order the chancellor declined to make, but gave leave to the petitioner to sue its receiver at law to recover said engine.

On August 6, 1894, the receiver filed his petition, asking the court to make an order for the sale of all the property conveyed by the assignment remaining in his hands.  In his petition he stated that the Meridian Machine Company had recovered its judgment as above set forth; that Blalack and others had sued out attachments at law, aggregating about $9,000, before the assignment had been executed; that the Love Manufacturing Company, and other creditors, were proceeding in chancery to vacate the assignment, and that the probabilities were that this

litigation could not be ended for a year or more; that because of the location of the property it was impossible for him to procure insurance thereon, and that the interest of all creditors would be subserved by its sale.

On August 29 the chancellor made an order reciting that, upon full hearing, the court was satisfied that it would be to the interest of all the creditors of the estate that a sale of the property should be made, and directed the receiver to advertise for bids for the same, to be submitted to the court. On this order the receiver made the following advertisement, which he published in the *Meridian News, The Manufacturers' Record,* of Baltimore, and *The Tradesman,* of Chattanooga, viz. :

" For sale—a splendid southern industry at Meridian, Miss., a town of 15,000 inhabitants, with five railroads, that has had steady growth without a " boom," and has never been disturbed by strikes or financial panics, and surrounded by an inexhaustible supply of hard wood, as well as yellow pine. Queen City Manufacturing Company's plant, which manufactures spokes, hubs, rims, wheels, etc., all completely new. As receiver, I am directed by the chancery court to advertise this splendid property for bids, to be submitted first Monday in November next, reserving the right to reject all. Correspondence solicited. Can satisfactorily explain why property is in the hands of receiver. Address        GEO. M. HODGES, *Receiver,*
*"Meridian, Miss."*

On November 4 the receiver reported to the court that he had received no bids for the property, and asked an order of sale for cash at public outcry. This order the court made. In advertising the property under this order, the receiver stated that he would make " good title to the property," and this advertisement the receiver filed as an exhibit to his report of sale.

On December 1 the public sale was made, when William T. Brown and A. J. Weems became purchasers, at the price of $7,412.50. When the report of sale was made objections were

interposed to its confirmation by certain creditors, and, among other grounds of objections, it was urged that the property had been sold at a grossly inadequate price.

We infer that the chancellor would have rejected the report if an offer had been made to advance the bid twenty per cent., for the order of confirmation recites that the objectors refused to guarantee such an advance on a resale, and the sale was confirmed. The sale occurred on December 1, 1894. On December 1 the Meridian Machine Company filed its application, setting up its priority of lien on the property, and asking an order that the receiver might be directed to pay its claim out of the proceeds of the sale which had been ordered, and which the receiver was about to make, and the chancellor made the order as requested. It now appears, from the proceedings subsequently taken in the cause, and which will be hereinafter set forth, that Weems and Brown did not, in fact, pay in cash the amount of their bid to the receiver. Weems gave the receiver his check for the amount of the bid, but asked him not to present it at that time, and the receiver subsequently learned that the check would not be paid by the bank on which it had been given, as Weems had not that amount of money to his credit.

Weems and Brown were creditors of the Queen City Manufacturing Company, preferred in the assignment, and if the attachments of Blalack and others, and the proceedings by the Love Manufacturing Company, seeking to vacate the assignment, could have been defeated, the settlement of his bid would doubtless have been arranged between Weems and the receiver.

So it is that the matters were permitted to stand in this condition for some months, during which time Weems paid to the receiver something over $1,000 in money, and either paid off or bought the judgment of the Meridian Machine Company. The attachments at law of Blalack and the other creditors were sustained, and the claimants' issue found against the receiver. The result of this was that judgments were rendered against

the receiver and Weems and Brown, his sureties, for an amount exceeding the sum bid by Weems and Brown at the receiver's sale of the property. A *venditioni exponas* was issued for the sale of the property which had been attached, to prevent which Weems paid in cash the sum of $5,000 to the judgment creditor, and procured a third person to take an assignment of the Blalack judgment and hold up execution thereof. He claims that, as matter of fact, he paid off the judgment, and being entitled, under the statute, as surety for the receiver to the judgment as assignee by operation of law, he in fact paid off the judgment entirely and assigned it to the third persons as security for the money he advanced. The petition in chancery by the Love Manufacturing Company and others resulted in a decree annulling the assignment, and subjecting the property to the payment of the petitioner's debts. In this condition of affairs, the proceedings giving rise to the controversy now before the court were instituted.

A petition was filed by the receiver setting up the facts that Weems and Brown had not paid the amount of their bid for the property sold at the receiver's sale, and praying the court to make an order upon Weems and Brown either to pay to the receiver the unpaid purchase money, or to restore the possession of the property to him in order that a resale thereof might be made. Brown having in the meantime conveyed to Weems his interest in the property bought at the receiver's sale, the latter answered the petition of the receiver setting up the payments he had been compelled to make as surety for the receiver under the attachment of Blalack and others, and insisting that this was in effect a payment of the sum due the receiver. On the hearing the chancellor directed Weems to pay into court the amount of the bid and reserved all questions as to the distribution of the fund for further consideration. From this decree Weems prayed and obtained an appeal with supersedeas, and the question presented is whether, under the circumstances, this order should have been made.

The principal point made and relied on by the receiver is, that the chancery court sold, and Weems and Brown bought the property, subject to all prior liens and incumbrances existing upon it; that the rule of *caveat emptor* applies to judicial sales, and that the officer of the court makes no warranty whatever as to the title, and the purchaser takes only the title of the litigants, and holds it, as they did, subject to all liens upon it. The correctness of this proposition as a general rule is undoubted, but we think it can have no application under the facts of this case. Manifestly, neither the court nor the receiver nor the purchasers understood that the sale in this case was subject to this rule.

The advertisement which the receiver made for bids to be submitted to the court, shows upon its face that the property was offered to the public as property unincumbered by any liens of which the court had notice. It was advertised as property in a condition to be put in the shape of a going manufacturing concern. Failing to obtain bids under this advertisement, the property was advertised for sale, and the assurance given in the notice that good title thereto would be made.

After the order of sale had been made and while the property was advertised and but four days before the day of sale, one of the creditors having confessedly a superior lien, applied to the chancellor and secured an anticipatory order for the payment of his claim out of the fund to be realized by the sale.

In June, 1895, another creditor standing, so far as the record shows, in the precise attitude of Blalack, was pressing his execution, and the receiver applied to the court and secured an order for the payment of this judgment out of the proceeds of the sale.

The whole record demonstrates that all the parties and the court intended and understood that a sale of the property was to be made, discharged of the liens claimed by the adversary litigants, and that the proceeds of sale were to stand in lieu of the property, and to be distributed according to the rights of

the parties as they would have been had no sale occurred. Indeed, no sale should have been made except upon such understanding. The receiver, as the representative of the court, was bound upon the forthcoming bond, by virtue of which alone the chancery court secured jurisdiction of the property.

The protection of its officer devolved upon the court the duty of preserving the property or its proceeds for the satisfaction of any judgment that might be rendered against him. It would be an improper thing for a court to order a sale and consequent dissipation of personal property, for which its officer was bound to answer, and apply the proceeds arising therefrom to the payment of other demands. If this were done, and the property removed by the purchaser beyond the jurisdiction of the court, and the proceeds distributed among other creditors, the court would be in danger of finding itself unable to protect its officer and his sureties, and unable to comply with its duty of restoring the *status quo*, and the result would be, either that the officer of the court and his sureties would be called upon to respond as individuals, or the rights of the prior attaching creditors would be disregarded.

It is no answer to this to say that Weems solicited the receiver to make the bond; that he was interested in the litigation; that he was an officer of the insolvent corporation, and participated as such in the making of the fraudulent assignment in which his own claim was preferred. He is in this case as a surety for the receiver, and, as such, indirectly a surety for the court. He has suffered the only penalty that the law inflicts for the execution of the unlawful assignment, viz., a loss of all the benefits it secured to him.

Because he may not retain the benefit given to him by the fraudulent assignment, does not carry with it the further and other penalty of personal responsibility to other creditors; his liability cannot be greater than their rights, and they have none, under the developed facts of this case, except to subject the property of their debtor to the payment of their demands. We

are, therefore, clearly of the opinion that the only proper course for the court to have pursued under the circumstances of this case, was to order an outright sale of the property discharged of the conflicting liens, and to hold the fund for distribution among creditors according to their priority of right; that this was what was done, and intended to be done, by the court, and that the rights of all parties should be settled accordingly.

While the course of procedure has been irregular, we are unable to perceive any reason why Weems should now be required to pay into court the fund which he has already once paid to the party entitled thereto. Under our statute governing cases of general assignments, the assignee who has given bond as required thereby, occupies a dual relation as receiver and assignee. If the assignment is sustained, he is receiver of the court, but if it is successfully assailed and overturned, his character as assignee largely predominates, and limits his rights as receiver in very many particulars.

The subject is fully discussed in the case of the *Perry-Mason Shoe Co.* v. *Sykes*, 72 Miss., 390, and we can add nothing to the very clear opinion of our Brother Whitfield in that case. An application of the principle therein announced to the facts of this case will show that there are no rights in the receiver which require this fund to pass through his hands. The sum already paid to him in cash is probably more than sufficient to discharge any claim against the property existing in favor of the receiver. If, however, upon a full investigation, it shall be made to appear that any other creditor, or the receiver himself, has a right superior to that of the parties to whom Weems has made payments, to any part of the fund, he should be required to pay such sum into court, but such sum only. About $440 worth of the property sold seems not to have been attached by anyone prior to the filing of the cross petition by the Love Manufacturing Company and others. Unless the value of this property has been disbursed, or may be necessary to be disbursed in the payment of claims or expenses having

priority over the cross petitioners, they would be entitled to the payment thereof, as their lien on this property seems to be prior to that of any other creditors. This matter may be fully investigated and determined in the further prosecution of the cause. An account should be fully stated, under the direction of the court, touching all the conflicting claims, and a proper decree made for their settlement, giving in such accounting credit to Weems for any sum he has paid out in the discharge of liens upon the property in their order of priority. For any sum which, upon such accounting, shall appear to be needed for the payment of claims superior to those he has discharged an order should be made directing its payment into court by him.

*The decree will be reversed and the cause remanded to be proceeded with in accordance with this opinion.*